UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

HENRI JONTHAM BASSIALA KENDA      CIVIL ACTION 1:26-CV-00977 SEC P

VERSUS      JUDGE EDWARDS

ANDY BROWN, ET AL.      MAGISTRATE JUDGE WHITEHURST

MEMORANDUM RULING AND ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by Petitioner Henri Jontham Bassiala Kenda ("Kenda"), an immigration detainee at the Jackson Parish Correctional Center in Jonesboro, Louisiana.  The federal Respondents ("the Government") answered the Petition (ECF No. 11), and Kenda filed a Reply (ECF No. 12).

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

I.    Background

Kenda is a 22-year-old national of the Democratic Republic of the Congo who entered the United States seeking asylum in January 2025.  ECF No. 1 at 4.

On January 11, 2025, Kenda was ordered removed through expedited removal proceedings.  ECF No. 11-2 at 1.  However, the expedited removal order was vacated after Kenda demonstrated a credible fear of persecution or torture.  ECF No. 11-1 at

1

1.  Kenda was issued a Notice to Appear and released from detention[1].  ECF Nos. 1 at 3; 11 at 2.

Kenda alleges that he filed an application for asylum, withholding of removal, and relief under the Convention Against Torture.  ECF No. 1 at 6.  His asylum hearing was scheduled for August 2, 2029.  *Id.*

Kenda asserts that in December 2025, he received a message instructing him to report to the Dallas ICE field office.  Upon arrival, Kenda's ankle monitor was removed, and he was detained without any notice or warning.  ECF No. 1 at 7.  When he realized he was being detained, Kenda asked the ICE agents if he had violated any laws or rules, or if he had otherwise done anything wrong.  *Id.*  He was told that he had not done anything wrong, but that he was being detained solely to move up his August 2029 asylum hearing.  *Id.*  Indeed, Kenda's asylum hearing was moved up from August 2029 to January 21, 2026, with 30 minutes notice to Kenda.  ECF No. 1 at 8.  The Immigration Judge denied Kenda's application for asylum, and he appealed.  According to the Executive Office for Immigration Review's automated case information, the appeal remains pending.[2]

---

[1] The Government states that Kenda was released on interim parole pending removal proceedings. Kenda alleges that he was released on recognizance.  ECF No. 1 at 3.  The Government argues: "*However, Petitioner has* not presented to this Court any document to corroborate this assertion, and undersigned counsel is not aware of any such 'Order of Release on Recognizance.'"  ECF No. 11 at 2 (emphasis in original).  The Government, not Kenda, possesses his complete A-file and therefore is in the best position to establish the legal basis for his release. Yet it offers no documentary evidence identifying the authority under which he was released or explain why any distinction between interim parole and release on recognizance is material to Kenda's claim.

[2] https://acis.eoir.justice.gov/en/

## II.     Law and Analysis

Kenda contends that his detention without any pre-deprivation process violates his procedural due process rights.

The statutory question and the constitutional question overlap, but they are distinct. As previously explained in *Diallo, Kilic, Ghughunishvili, Garcia-Gil, Andrade-Cunalata* and other cases, a procedural due process claim is separate and apart from whether a detainee is ultimately subject to mandatory detention under § 1225(b). *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La. Mar. 5, 2026), *Kilic v. Acuna, et al.*, 1:25-CV-01928, 2026 WL 1652575, at *2 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026); *Andrade-Cunalata v. Wyatt*, No. 3:26-CV-01155 (W.D. La. July 16, 2026).

The question is whether, after the Government affirmatively released Kenda and permitted him to remain at liberty in the United States, the Fifth Amendment required some form of individualized process before that liberty can be revoked. *See Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7, *9 (W.D. Tex. Oct. 21, 2025).

Neither *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. 2026), forecloses Kenda's constitutional claim.  As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Under *Mathews*, courts consider: (1) the private interest

affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

### 1.    Private Interest

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.  And "[t]he interest in being free from physical detention is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at \*2 (W.D. Tex. Sept. 8, 2025).

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez v. Ortega*, 26-50183, 2026 WL 1906557, at \*15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026), Kenda's re-detention did not result from the Government's first discovery of his presence.  An officer found Kenda had a credible fear of returning to Congo, and DHS chose to release him in January 2025.  The Government was obviously aware of Kenda's location, as it does not dispute that Kenda was monitored through an ADT ankle monitor.  ECF No. 1 at 7.  Thus, regardless of the legal characterization of Kenda's initial release, which is disputed, the Government knowingly permitted him to reside in the community while his immigration proceedings progressed before re-detaining him in December 2025.  That release allowed Kenda—with the Government's express permission—to live in the community, associate with others, and

establish ties in the United States while his immigration proceedings remained pending. *See Morrissey*, 408 U.S. at 482.

Citing 8 C.F.R. § 236.1(c)(9) and *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981), the Government argues that discretionary release from immigration custody does not create a vested constitutional entitlement to remain at liberty indefinitely, particularly where the governing regulatory framework expressly provides that such release may be revoked at any time in the agency's discretion. ECF No. 11 at 3. But § 236.1(c)(9) and *Matter of Sugay* address DHS's authority to revoke release, not the process constitutionally required before doing so. That question—not DHS's authority to revoke release—is the crux of Kenda's claim. Rather, he challenges the procedures employed before DHS exercised its authority. The existence of statutory or regulatory discretion does not eliminate the procedural protections required by the Fifth Amendment when the Government deprives an individual of a protected liberty interest. Indeed, the Supreme Court has repeatedly recognized that conditional liberty may constitute a protected liberty interest even when the Government retains authority to revoke it. *See, e.g., Villanueva v. Tate*, 801 F.Supp.3d 689, 704 (S.D. Tex. 2025) (individuals who have been conditionally released from detention have a protected interest in their continued liberty even when the released individual is subject to extensive conditions) (citing *Young v. Harper*, 520 U.S. 143, 147, 152-153 (1997); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Thus, the first factor strongly favors Kenda.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor also favors Kenda. The Government re-detained Kenda without providing advance notice, an opportunity to be heard, or any individualized process before depriving him of his liberty. As this Court noted in *Andrade-Cunalata*, the complete

absence of procedural safeguards creates a substantial risk of erroneous deprivation because the Government alone determines when a previously granted liberty interest will be revoked.

The Government implies that no additional procedures are constitutionally required because Kenda is subject to mandatory detention under § 1225(b).  ECF No. 11 at 3-4.  But Kendra's procedural due process claim does not depend on whether he ultimately is entitled to a discretionary bond hearing.  "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione v. Falco*, 2023 WL 6255529, at *12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner.'")).

Moreover, minimal procedural safeguards could reduce the risk of erroneous deprivation without altering the statutory detention framework.  At a minimum, notice of the reasons for re-detention and an opportunity to contest the factual issues surrounding the revocation of Kenda's liberty would provide meaningful procedural protection while leaving the ultimate statutory detention determination intact.  The Due Process Clause requires the procedural protections as the situation demands. *Mathews*, 424 U.S. at 334 (citing *Morrissey*, 408 U.S. at 481).  This case illustrates why some measure of process has value.  The precise circumstances of Kenda's original release from detention are disputed.  The record contains no information regarding the terms or legal authority under which Kenda was released.  Providing notice and an opportunity to be heard before revoking that liberty interest would help ensure that any deprivation rests on an accurate factual foundation.

The Government's reliance on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), is unpersuasive. *Doe* did not involve the Government's revocation of an existing liberty interest through physical confinement.  Rather, it concerned placement on a public registry. *Doe* sought a hearing to establish a fact—his current dangerousness—that the

governing statute rendered legally irrelevant. *Doe,* 538 U.S. at 7-8. Here, Kenda does not merely seek an opportunity to contest dangerousness or flight risk. His claim challenges the process preceding the deprivation of liberty itself, not simply the Government's ultimate statutory authority to detain him. And civil immigration detention implicates one of the most fundamental liberty interests protected by the Due Process Clause. *See Jaimes Gomez v. Ortega*, 1:26-CV-00646, 2026 WL 1196603, at *3 (W.D. Tex. Apr. 15, 2026) (finding *Doe* inapposite) (collecting cases). *Doe* does not answer the distinct constitutional question presented here: whether the Government may revoke previously granted physical liberty without first affording constitutionally adequate procedures.

This conclusion is consistent with longstanding Supreme Court precedent recognizing that "[t]he right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993). Likewise, "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). At a minimum, the Fifth Amendment generally requires notice and a meaningful opportunity to be heard before the Government deprives an individual of a significant liberty interest.

### 3.    Government's Interest

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b). It retains every substantive authority Congress has conferred. The Constitution governs only the manner in which that authority is exercised. Providing constitutionally adequate procedures before revoking previously granted liberty does not undermine Congress's determination that applicants for admission are generally subject to mandatory detention. Rather, it requires only that the Government afford constitutionally

7

adequate procedures before withdrawing liberty it has previously conferred.  Due process protections remain even when government authorities have discretion to revoke supervision. *See Mendoza v. Noem*, 823 F.Supp.3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

Balancing the three *Mathews* factors, the Court concludes that the Government violated Kenda's procedural due process rights by re-detaining him without affording any individualized process after releasing Kenda and permitting him to remain at liberty.  This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government may revoke an established liberty interest without affording due process.

Because the Court concludes that Kenda is entitled to relief on his procedural due process claim, it need not address his remaining arguments.

The Court emphasizes the limited nature of its holding. This decision does not determine whether Kenda ultimately is subject to mandatory detention under § 1225(b), nor does it prevent DHS from exercising whatever detention authority Congress has granted. The Court concludes only that, after the Government affirmatively released Kenda and permitted him to remain at liberty for nearly a year, the Fifth Amendment required constitutionally adequate procedures before that liberty could be revoked.

## III.     Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.  Respondents are ORDERED to release Kenda from custody by July 27, 2026, with advance notice provided to counsel.

IT IS FURTHER ORDERED that the parties file a joint notice of compliance with this Order within 24 hours of Kenda's release.

THUS DONE in Chambers on this 23rd day of July, 2026.

_____
JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE